IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| CATHY YEARWOOD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| DOLGENCORP, LLC, | ) ) |
| Defendant. | ) ) ) ) |

6:15-cv-00898-LSC

**MEMORANDUM OF OPINION**

Plaintiff Cathy Yearwood ("Yearwood") filed this action against Defendant Dolgencorp, LLC ("Dollar General") alleging violations of her rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, arising from her former employment with Dollar General. Before the Court is Dollar General's Fed. R. Civ. P. 12(b)(6) motion to dismiss or, in the alternative, to compel arbitration and stay proceedings. (Doc. 8.) Dollar General contends that Yearwood signed an agreement, enforced by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, consenting to arbitrate any dispute arising from her employment, while Yearwood disputes the validity of the agreement. Also before the Court is Yearwood's motion to amend her complaint. (Doc. 19.) The issues here have been fully briefed by the parties and are ripe for review. For the reasons stated below, Dollar General's

motion to dismiss is due to be granted, rendering Yearwood's motion to amend moot.

## I. Background

The arbitration agreement at issue is Dollar General's standard agreement included among other "pre-employment documents" that Dollar General requires all new employees to review and sign through its online hiring system. (Doc. 9 at Page 1.) The online hiring system has certain procedures allowing employees to electronically sign these pre-employment documents. In place of their name, employees agree that they will be identified by their initials. (Doc. 9 at Page 2.) An employee can only access this online hiring system through the use of her initials and her personal password. In order to sign a document on the system, the employee must enter her password again. (Doc. at Page 2.) Yearwood agreed to use this electronic signature procedure on October 24, 2014. (Doc. 9-3 at Page 1.)

Yearwood signed several forms through this system, using her initials as her electronic signature. (Doc. 16-1 at Page 2, 3.) Among the forms that Dollar General contends Yearwood signed is an arbitration agreement dated October 24, 2014, requiring Yearwood to submit all "claims alleging violations of wage and hour laws" to arbitration. (Doc. 9-1 at Page 1.)

The agreement is titled "Arbitration Agreement" in bold print and in a larger type-size than the rest of the document's contents. Beneath the title is the following statement: "Please read this entire document carefully. This is an important legal document that concerns legal rights, so please take your time and consult with an attorney if necessary." At the bottom of the agreement are two boxes and a signature line. If the employee checks the first box, she binds Dollar General and herself to the terms of the agreement. Checking the second box allows the employee to take up to thirty days to review the agreement and decide whether she wants to accept or opt out of the agreement. If the employee does not opt out within the 30 days, she is deemed to have agreed to the document's terms. By signing the document, the employee certifies "that the above information is true and correct, and [she] consents to the conditions of hiring." Yearwood's name and social security number appear above the two boxes, and her initials are on the signature line. The first box, indicating assent to the agreement, is checked. The date is marked as "10/24/2014."

Yearwood does not specifically remember signing the agreement, but she does remember signing at least one form on October 24. In her affidavit she claims that on October 24, her manager, Tony Gray ("Gray"), told her "to sit down at the computer and put [her] initials" on forms regarding "taxes and company

policies including uniforms and name tags." (Doc. 16-1 at 3.) Yearwood states that Gray did not mention arbitration and that he knew that she "did not have an opportunity to read anything on the computer screen as [she] was needed back at work." (Doc. 16-1 at 3.) Yearwood claims that there were "no blocks to check, only a spot for [her] initials to be placed for everything else" on the documents that she signed. (Doc. 16-1 at 3.) Dollar General, however, contends that this document was signed by Yearwood and binds her to submit her FLSA claim to arbitration.

## II.   STANDARD OF REVIEW

"[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Comp., Inc. v. Dobson*, 513 U.S. 265, 270 (1995).  The FAA thus places arbitration agreements "upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). The FAA applies to all "contract[s] evidencing a transaction involving commerce."  9 U.S.C. § 2.  Thus, "claims [that arise] under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002).  These agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. Mindful of this "federal policy favoring arbitration," courts apply state law to determine

enforceability. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

### III. DISCUSSION

A party will only be compelled to arbitrate if it "has entered into an agreement to do so." *World Rentals & Sales, LLC v. Volve Const. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008). While the parties' intentions control, "those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). However, "if the validity of the agreement to arbitrate is in issue, a district court, not a panel of arbitrators, must decide if the arbitration clause is enforceable against the parties." *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992). "To make a genuine issue entitling the [party seeking to avoid arbitration] to a trial by jury [on the arbitrability question], an unequivocal denial that the agreement has been made [is] needed, and some evidence should [be] produced to substantiate the denial." *Chastain*, 957 F.2d at 854 (alterations in original) (quoting *T&R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980)).

Dollar General has produced an arbitration agreement with what appears to be Yearwood's electronic signature. However, Yearwood questions the

authenticity of her signature and feels that she was defrauded into signing the document if the signature is hers.

### A.   Validity of the Signature.

Yearwood's affidavit indicates that she does not recall signing the arbitration agreement or any type of form requiring her to check a box. To the extent that Yearwood's affidavit can be interpreted as an unequivocal denial that she signed the agreement, she has not produced any evidence to substantiate that denial. Although an electronic signature has the same effect as a handwritten signature, it still must be attributed to that person before it can be established as the act of that person. *Ala. Code* § 8-1A-9 (2015). Whether an electronic signature is attributable as an act of that person "may be shown in any manner, including a showing of the efficacy of any security procedure . . . [and] from the context and surrounding circumstances at the time of its creation, execution, or adoption." *Id.*

The evidence presented shows that the signature on the arbitration agreement belongs to Yearwood. Under Dollar General's electronic signature policy, Yearwood's initials could only have been placed on the arbitration agreement by a person using her unique login ID and password. (Doc. 9 at Page 2.) Yearwood's signature appears at the bottom of the form acknowledging this secure process and agreeing not to disclose her password to anyone. (Doc. 9-3 at Page 1.)

Also, Yearwood admits signing electronic forms through this very system and in this very manner on October 24, 2014, the date of the arbitration agreement. (Doc. 16-1 at 3; Doc. 9-3.) As such, the Court finds that the signature on the arbitration agreement is attributable to Yearwood.

Further, Yearwood asserts that she did not check the box agreeing to arbitrate. However, "[a] party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists." *Chastain*, 957 F.2d at 855. Instead, the party must offer "some evidence" to substantiate that denial. *Id.* at 854 (holding that the plaintiff's affidavit denying that she signed an arbitration agreement was substantiated by the defendant's concession that the signature was not hers). Unlike the plaintiff in *Chastain*, Yearwood has not presented evidence to substantiate her statement that she did not check the box agreeing to arbitrate. As such, Yearwood's uncorroborated denial that she checked the box, coupled with the fact that she signed the document, is insufficient to show a lack of mutual assent.

### B. Fraud in the Factum.

Alternatively, Yearwood contends that Gray, knowing that Yearwood did not have time to read the document because she was needed back at work, misled her about the nature of the document she signed. By this, Yearwood appears to raise

the issue of fraud in the factum, a showing of which demonstrates a lack of mutual assent. *See, e.g.*, *Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d 454, 459 (Ala. 2000) ("Fraud in the factum constitutes ineffective consent to the contract.") "Fraud in the factum occurs when a party 'procures a[nother] party's signature to an instrument without knowledge of its true nature or contents.'" *Id.* (alteration in original) (quoting *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 93 (1987)).

However, "a person who signs a contract cannot avoid her obligations under it by showing that she did not read what she signed." *Coleman v. Prudential Bache Securities, Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986). Instead, the party raising fraud in the factum must prove "by substantial evidence that he or she *reasonably relied* on the alleged misrepresentation." *Oakwood Mobile Homes, Inc.*, 773 So. 2d at 461 (emphasis in original) (holding that the defendant's claim of fraud in the factum failed because, despite being misled about the document's contents, the document was titled "ARBITRATION AGREEMENT" in bold-type font and thus he "would have had to have *closed his eyes to the truth* to believe that the document was not an arbitration agreement").

Here, to show that her signature was procured through fraud in the factum, Yearwood must establish both that Gray misled her and that her being needed back at work made it reasonable for her to rely on his statement. Yearwood's affidavit

states that Gray told her that the forms she was signing were "about taxes and company policies including uniforms and name tags." If the arbitration agreement was the only document Yearwood signed (other than the document agreeing to be bound by her electronic signature) then Gray's statement constituted a misrepresentation. The arbitration agreement mentions nothing about taxes, uniforms, or name tags.

However, even if there was misrepresentation, Yearwood has failed to offer evidence showing that her reliance on the misrepresentation was reasonable. Yearwood asserts that Gray "knew [she] did not have an opportunity to read anything on the computer screen as [she] was needed back at work." If Yearwood felt rushed or hurried into signing the agreement, she could have refused to sign it until she had time read it or she could have asked for more time. There are no indications that she requested more time to read the agreement or that any such request was refused. Instead, Yearwood chose to electronically sign the document without objection. *See, e.g.*, *Ex parte Perry*, 477 So. 2d 859, 863 (Ala. 1999) (Hooper, C.J., with two Justices concurring and two Justices concurring in the result) (noting that the plaintiff had not reasonably relied on a misrepresentation because "[i]f she felt hurried, she could have slowed the process down or could have refused to sign

the contract until she had time to read it in its entirety," especially considering the fact that the contract had a statement cautioning the parties to read it carefully).

In addition, a quick glance at the top of the document would have clearly indicated to Yearwood that she was signing an arbitration agreement. The document is titled at the top "Arbitration Agreement" in bold print with a larger type-size than the rest of the document. Like the defendant in *Oakwood Mobile Homes*, Yearwood would not have had to read every word of the agreement to understand what she was signing, and she does not contend that she was wholly prevented from seeing the document in its entirety. Because any reliance on Gray's misleading statement was not reasonable, Yearwood's contention that the agreement is invalid based on fraud in the factum fails.

Yearwood responded to Dollar General's motion to dismiss requesting limited discovery on the issue of mutual assent and requesting a trial regarding the validity of the arbitration agreement. However, discovery regarding the signing of the agreement and the surrounding circumstances would be fruitless. The only way someone other than Yearwood could have entered her initials on the agreement would be if she gave that person her personal password, and Yearwood has offered no evidence indicating that she shared her password with anyone.[1] Discovery would

---

[1] In fact, Yearwood signed a document agreeing *not* to share her password with another person.

not lend itself to evidence showing otherwise, because Yearwood herself would know if she shared her password.

Further, even if the Court had before it more evidence supporting Yearwood's assertion that she was needed back at work and felt hurried, she has failed to offer any evidence showing that these time constraints gave her no option but to sign without reading or even glancing at the document. These facts, if they existed, would be within Yearwood's personal knowledge and she would need no additional discovery to present them to the Court. Thus, discovery is not necessary.

## IV. Conclusion

Because Yearwood has failed to present sufficient evidence showing that the arbitration agreement is invalid, the Court finds that the arbitration agreement is enforceable. Accordingly, Dollar General's motion to dismiss (Doc. 8) is due to be GRANTED to the extent it seeks to compel arbitration. Because the Court finds that Dollar General's motion to dismiss is due to be granted, Yearwood's motion to amend (Doc. 19) is deemed MOOT. A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON OCTOBER 13, 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

182184